IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

FILED
02 FEB 22 AM 11:54
U.S. ____ ____URT
N.D. OF ALABAMA

TRUMAN C. HALLMARK,

    Plaintiff,

vs.                                  CASE NO. CV-01-J-897-NW

WISE ALLOYS LLC.,

    Defendant.

ENTERED
FEB 22 2002

## MEMORANDUM OPINION

    Currently pending before the court is the defendant's motion for summary judgment (doc. 21), and brief and evidence in support of its motion, to which the plaintiff has submitted evidence and a brief in opposition thereto. The defendant thereafter filed a reply. The court has reviewed the motion, the briefs in support of and in opposition to the motion and the evidentiary submissions of the parties.

### I. Procedural History

    Plaintiff commenced this action by filing a complaint (doc. 1) alleging that the defendant discriminated against him on the basis of age, as evidenced by his termination followed by the alleged hiring of someone younger than plaintiff for the same position. Complaint at ¶¶ 7, 9. The plaintiff alleges that these actions were in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. He further alleges that the defendant violated the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f), by not accurately listing employees in plaintiff's job classification or organizational



unit for purposes of the release he signed. Complaint at ¶ 11. Upon consideration of the pleadings, briefs and evidentiary submissions, the court concludes that the motion for summary judgment is due to be granted.

## II. Factual Background

In the light most favorable to the plaintiff, the facts of this case are as follows: The plaintiff was hired by defendant in April, 1999, following defendant's purchase of Reynolds Metals Company ("Reynolds"), for whom plaintiff had previously worked.

The plaintiff was manager of health and safety for Reynolds until 1996, when he was replaced in that position by Stan Sockwell. Plaintiff depo. at 23-24. Sockwell took over the plaintiff's responsibilities for planning and training initiatives. *Id.* at 24. After defendant purchased Reynolds, in July or August, 1999, Sockwell was transferred. *Id.* at 56. The plaintiff then reported to John Wilham, Vice President of Human Resources, and next reported to Bob Marion, when he was hired in November, 1999 as Director of Health and Safety.[1] Plaintiff depo. at 56-57; Marion depo. at 6; Wilham depo. at 15-14.

Marion testified that George Stowe, the president of defendant company, had an ongoing reorganization of the work force, beginning when defendant purchased the company

---

[1] Marion did not actually replace Sockwell, as the job responsibilities changed. Marion depo. at 16. In fact, Marion's original job, Director of Health and Safety, has now been eliminated. Marion depo. at 134. Wilham has since left the company. Wilham depo. at 6; Hester depo. at 91-92.

2

in April, 1999. Marion depo. at 14-15, 45-47. Wilham stated that the safety department was overstaffed. Wilham depo. at 43.

The plaintiff was considered to be a safety supervisor, although he did not supervise anyone. Marion depo. at 27, 110. He was terminated on November 23, 1999. Prior to his termination, Jim Henderhorst accepted employment with defendant, although he did not begin work until December 6, 1999. *Id.* at 71. The plaintiff asserts that Henderhorst replaced him.

Henderhorst was told by Wilham he was filling a new position. Henderhorst depo. at 28-29. No one told him he was replacing the plaintiff. Henderhorst depo. at 37. Henderhorst's job title was safety and training manager.[2] Marion depo. at 19, 68. The job entailed planning and leadership roles in safety and training functions, and developing training programs, which was different from plaintiff's position that had no training component. Marion depo. at 70, 100, 109; Wilham depo. at 77, 81; Hester depo. at 23-24, 38.[3] The new position had been considered since the defendant began restructuring the health and safety department with the removal of Sockwell. Marion depo. at 104-105. Henderhorst's position required him to identify and develop training programs.[4] Wilham

---

[2] Harvey Scales had been the training manager at Reynolds. He was not hired by Wise and the position of training manager was never filled. Hester depo. at 38.

[3] Larry Hester was the Human Resources Service Manager.

[4] Since the position Marion was hired to fill has been eliminated, Henderhorst's area of responsibility has increased further. Marion depo. at 134-135.

depo. at 77. While the new position was being created before the plaintiff was terminated, the plaintiff was not considered capable of filling it. Marion depo. at 101. Marion thought the plaintiff suffered from a lack of initiative. *Id.* at 131. In fact, Marion did not believe the plaintiff could manage the job functions at the level of independent action required. *Id.* at 127-128, 131.

After Marion was hired, he rewrote the safety department's job descriptions. Marion depo. at 105. He was not concerned with what they had been doing under Reynolds. *Id.* The department was restructured. Wilham depo. at 61-62. Hester states that the plaintiff's position was changed with Wise, and then his position was eliminated as part of the reorganization. Wise then created a new position which Henderhorst filled that had some overlapping job duties with plaintiff's old position. Hester depo. at 43.

The plaintiff was told his job was eliminated. Plaintiff depo. at 77. The plaintiff is unsure how he learned that Henderhorst had been hired, but he learned it in early December, 1999. *Id.* at 71. Someone told him that Henderhorst had taken over his job. *Id.* at 72. He did not know the position description of the job Henderhorst was offered and did not know Henderhorst's qualifications. *Id.* at 76. The plaintiff testified,"I'm not sure if I still know exactly what his job description is, but I know based on what I've been told that he's doing nothing that we had not done before." *Id.* at 91. The plaintiff stated that the source of his information was "Hearsay .... So I'm just going based on coworkers that work in that department that tell me what he's doing." *Id.* at 91. *See also, id.* at 117-119. The plaintiff

has never asked Henderhorst what his job entails, although they see each other at seminars. *Id.* at 93-94.

Marion testified that, after he was hired, he had several discussions concerning the overall performance of the safety department, and that the safety performance of the company was not very good. Marion depo. at 26, 28, 29-30. The safety department lacked a systematic approach to identifying hazards, and the capabilities of the supervisory people and the competency of the safety and health staff were questionable. *Id.* at 31-32. Stowe actually made the decision to terminate the plaintiff, although Wilham recommended it. Wilham at 12, 40-41, 55.

Marion was informed of the decision to terminate the plaintiff. Marion depo. at 39. He had not worked with the plaintiff very long but stated, "I do have some concerns about his ability to make change with our organization. [Wilham] said do you think that there's a possibility that that can be corrected, and I said not from what I've seen so far."[5] *Id.* at 39. Wilham stated that the plaintiff "failed miserably" to do a reasonable presentation three or four times. Wilham depo. at 13. At that point, Stowe told Wilham that the plaintiff was "basically providing no value to the company." *Id.* Wilham stated that "T.C. was very set in the Reynolds mode ... and he did not have what I would call a sense of urgency into – by

---

[5]Marion further explained that when he had an opportunity to talk to the plaintiff, the plaintiff was "very pessimistic, made comments about the status quo, that Reynolds was doing certain things, that we could not make change. He was very defensive, and that continued through the time that I knew Mr. Hallmark." Marion depo. at 43.

5

becoming a smaller company, there was a lot of things that needed to be done from a business perspective that he was – he was either not willing to do, not able to do, or not capable of doing." *Id.* at 17. Wilham commented that the plaintiff lacked capability. Marion depo. at 41. Marion had other problems with the plaintiff in addition to his resistence to change, such as that he kept a second set of OSHA records which he changed from the originals, which is of questionable legality. *Id.* at 52-54, 58-59, 90-92. Marion viewed this as part of the dysfunction of the Reynolds organization. *Id.* at 54.

Wilham tried to talk to the plaintiff about his performance, but:

> I don't think T.C. ever fully grasped what I was trying to talk to him about. He was pretty well mired in the old way – in the way of doing things the way he had always done them. And what I was trying to impart to him was that, hey, ...this is a different world, this is a different story, we have to do things differently. And again, I'm not sure whether he didn't understand or he was simply not capable of stepping it up to the next level. But he was – he was not in total agreement that he was not performing at the highest level.

Wilham depo. at 24. Wilham was unsuccessful in getting the plaintiff to take responsibility to initiate programs. *Id.* at 50-51, 54-55, 56-57. Wilham told Stowe that the plaintiff was not going to ever be where they wanted him to be and that he saw no alternative to termination. *Id.* at 58.

Once Marion was hired, the only gap in the safety department was training, which defendant wanted to increase in frequency and coverage. Wilham depo. at 65-68. Keeping

6

the plaintiff and giving him this responsibility was considered, but defendant did not think he had the background or ability to fill this position.[6] *Id.* at 72.

Upon his termination, some of the plaintiff's job responsibilities were given to Pannell. Marion depo. at 24. Other responsibilities were eliminated, or given to the medical department. *Id.* at 55, 59-60, 84-85. The plaintiff's responsibilities for Worker's Compensation were reassigned to a person hired to manage all Worker's Compensation activity. *Id.* at 72. Marion also stated that the plaintiff's responsibilities were so limited that there was no need to discuss who would have those duties. *Id.* at 72; Wilham depo. at 59. *See also* Henderhorst depo. at 37-38.

After he was terminated, the plaintiff performed contract work for defendant, orienting outside contractors. Plaintiff depo. at 73-74, 120-127. The plaintiff draws early retirement from his employment at Reynolds. *Id.* at 148-150.

The plaintiff filed an EEOC charge in April, 2000 because he was angry:

> [a]bout being replaced by someone doing the job I had been doing without any knowledge that I had done anything wrong or had not done anything correctly or was not doing what I was supposed to. And I think this is really what -- what kind of angered me was that no one ever said I did anything incorrectly or was not doing my job. And I think at the time they called me in and said we don't like the way you're doing your job, I think it stinks, you can't get anything done and we're going to let you go, it would have hurt, but not as bad as being notified or learning later that someone had been hired to take my job right after they told me they were trying to downsize .... And it seemed to me like they didn't work quite honest with me.

---

[6]Wilham commented that the plaintiff lacked the ability to "take the ball and [run] with it." Plaintiff depo. at 75.

Plaintiff depo. at 104-105, 108. The plaintiff then states he filed the complaint because he was told his job was eliminated and then learned it was not. *Id.* at 110. He further explained he believes he was the victim of age discrimination because "I looked at everything possible, and the age was the only thing I could find. As far as ability, knowledge, everything that would distinguish one person from another, the age was the only thing I could see." *Id.* at 115. No one ever made any derogatory comments concerning his age when he worked for defendant, nor did he ever see anything in writing which he considered to be derogatory about age. *Id.* at 116. The plaintiff also stated that he filed an EEOC charge because:

> I filed a claim based on what I knew and what you've asked me already about age discrimination, but I did it mainly to say, okay, I'm not going to go away quietly. You did something that I don't think is right, and I thing that you need to know that. And the only way I knew to do that is through legal action.

Plaintiff depo. at 152-153.

The plaintiff also asserts that the release he signed, agreeing not to sue defendant for claims arising under the ADEA, is invalid because other employees with his same job classification were not listed.[7] The plaintiff states he was the only person out of the safety area that was selected for downsizing. Plaintiff depo. at 95-96. He was the only person listed in the safety and health department, and believes that the people in other department listed for comparison purposes were not fair comparators. *Id.* at 96. Plaintiff states only three people worked in the health and safety department, and he was the oldest. *Id.* at 97.

---

[7]*See* Release, defendant's exhibit 5 to plaintiff's depo.

8

He knew at the time he signed the release that he was the only person terminated from his department.[8] *Id.* at 97.

Hester went through the release with the plaintiff to make sure the plaintiff understood what he was signing. Plaintiff depo. at 79-81, 84. By signing the release, the plaintiff received an additional three months salary as part of his severance package. Other than this inducement, he was not coerced to sign the release. Plaintiff depo. at 84-87. The plaintiff states he was misinformed because, although he was told his job was being eliminated, Henderhorst had been hired to do the same job. *Id.* at 88. However, no replacement for plaintiff was ever discussed. Marion depo. at 71; Wilham depo. at 59; Hester depo. at 23-24. Wilham explained that "what we needed was something that he wasn't, and we did not need him to continue to do the same position that he had been doing." Wilham at 59; Hester depo. at 13-15.

Hester stated that he based the list of people who were not selected for termination, required by 29 U.S.C. § 626 (f)(1)(H), on who the plaintiff's peers were. In this case, he stated it would be the level six salary grade. Hester depo. at 54-56. He considered the peer group to be jobs that were at the same level as plaintiff's, because the plaintiff's job was

---

[8]Tim Pannell and Kristy Olive were the other two employees in the health and safety department. Plaintiff depo. at 98. Plaintiff and Pannell had the same job duties, although plaintiff earned more money. *Id.* at 99 -100; Wilham at 62-63. Pannell was moved to the position of supervisor of the protective services group, and later terminated. Plaintiff depo. at 97-98; Marion depo. at 21-22; Wilham depo. at 60. He was later terminated because he was not an effective supervisor. Marion depo. at 22, 24; Hester depo. at 85. Olive is still employed as an industrial hygienist, in which she has a degree. Plaintiff depo. at 98-101.

9

unique in that there was no other position just like his. *Id.* at 56, 71. Thus, he used other same grade professional positions within the service departments (labor relations, Human Resources, quality business systems and engineering). *Id.* at 56-57. He only considered grade level 6 because these would be the people at the same salary range and level of responsibility as the plaintiff. *Id.* at 57-58, 61.

### III. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477 U.S. at 249.

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case .... A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AL Transport*, 229 F.3d 1012, 1023 (11th Cir.2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

### IV. Discussion

Under the ADEA, an employer may not discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age. 29 U.S.C. § 623(a)(1); *Chapman v. AL Transport*, 229 F.3d 1012, 1024 (11th Cir.2000). Liability depends on whether the plaintiff's age actually motivated the employer's decision. His age must have actually played a role in the employer's decision

making process and had a determinative influence on the outcome. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2105, 147 L.Ed.2d 105 (2000) (citations omitted). To evaluate ADEA claims based on circumstantial evidence, this court must use the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Reeves*, 120 S.Ct. at 2105.

Under this burden shifting standard, the plaintiff must establish a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. at 1824. Establishment of a prima facie case creates a presumption that the employer unlawfully discriminated against the employee. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094 (1981); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997). In *Turlington v. Atlanta Gas Light Company*, 135 F.3d 1428 (11th Cir.1998), the Court specifically addressed the standard to apply when a plaintiff attempts to use circumstantial evidence to establish unlawful discrimination under the ADEA. The Court stated that a burden shifting scheme is employed, as follows: The plaintiff must establish a *prima facie* case of discrimination. The employer then must respond with a legitimate, nondiscriminatory reason for its actions. In order to prevail, the plaintiff must establish that the employer's articulated legitimate reason was a pretext to mask unlawful discrimination. *Turlington*, 135 F.3d at 1432, citing *Walker v. NationsBank of Fla., N.A.*, 53 F.3d 1548, 1556 (11th Cir.1995).

To establish his prima facie case under the ADEA for age discrimination, plaintiff must show (1) he was a member of the protected group (age), (2) he was subjected to an adverse employment action, (3) he was qualified for the job and (4) he was replaced or otherwise lost a position to a younger individual. *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999); *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207-08 (11th Cir. 1997). *See also O'Conner v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996).

Assuming the employee meets this burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment action. *Harris v. Shelby County Board of Education*, 99 F.3d 1078, 1083 (11th Cir. 1996). The defendant can feasibly present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted. *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 950 (11th Cir.1991), *cert. denied*, 502 U.S. 1058, 112 S.Ct. 935, 117 L.Ed.2d 106 (1992)(quoting *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 596 (11th Cir.1987). "If the defendant's proffer of credible, nondiscriminatory reasons for its actions is sufficiently probative, then the plaintiff must come forward with specific evidence demonstrating that the reasons given by the defendant were a pretext for discrimination." *Brown*, 939 F.2d at 950.

Once a defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination drops from the case. *Burdine*, 450 U.S. at 255, 101 S.Ct. at

1094 and n. 10. The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825. The focus of the case after the defendant meets its burden of production is on the defendant's subjective intent and the motivation behind the defendant's adverse employment action directed at plaintiff. *Harris*, 99 F.3d at 1083.

Taking the evidence presented in the light most favorable to the plaintiff, the court finds plaintiff cannot establish a prima facie case of age discrimination because he has failed to present any admissible evidence, as opposed to allegations, that he was replaced by someone younger than he is. The most the court can find to support this allegation is the plaintiff's deposition testimony that he heard, from various unspecified people, that Henderhorst was doing his old job. The plaintiff also states he decided he must have been terminated due to his age, because he was perfectly competent to do the job he had.

The defendant has presented undisputed evidence that the plaintiff simply could not perform the job that the defendant wanted him to perform.[9] Hence, even if the plaintiff had established a prima facie case, the defendant has produced a legitimate, nondiscriminatory reason for plaintiff's termination, namely that defendant was unhappy with the plaintiff's work performance.

---

[9] The fact that the plaintiff had satisfactorily performed his job for a prior employer is not disputed.

Furthermore, this court finds that the plaintiff was hired in April, 1999 and terminated in November, 1999. Any inference of discrimination is much weaker when the plaintiff is already well within the protected category when he was hired. *See e.g., O'Conner v. Viacom Inc./Viacom Int'l, Inc.*, 1996 WL 194299 at 7 (S.D.N.Y. April 23, 1996) *aff'd* 104 F.3d 356 (2nd Cir.1996); citing *Stanojev v. Ebasco Servs., Inc.*, 643 F.2d 914, 921 (2nd Cir.1981). The plaintiff has presented no evidence to this court that stated reasons he was terminated were pretextual. The defendant's numerous examples of problems with the plaintiff's job performance call into question plaintiff's ability to do the job the defendant wanted him to do. *See Holiness v. Moore-Handley*, 114 F.Supp.2d 1176, 1182-1183 (N.D.Ala.1999) ("[The plaintiff's] assertions of his own good performance in the face of the documented deficiencies are insufficient to show that [defendants] proffered reasons are pretextual"), citing *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997).

While the plaintiff makes loose allegations that his job performance was acceptable, the plaintiff may not establish that an employer's proffered reasons are pretextual merely by questioning the wisdom of the employer's reasons, at least not where the reasons are the kind that might motivate a reasonable employer. *Lee v. GTE Florida*, 226 F.3d 1249, 1253 (11th Cir. 2000). This court finds that any reasonable jury could find from the evidence before this court that the plaintiff was not terminated because of his age.

Because the court finds that, regardless of the release, the plaintiff cannot satisfy his burden of proof to ultimately prevail on his claim, the court does not consider whether he is

15

barred from bringing this claim by virtue of the release. Even if the court found the plaintiff was not barred, he still could not prevail on the merits of his ADEA claim. Thus, a finding by this court that the release did, or did not, meet with the statutory requirements of the OWBPA would not change the outcome of this court's ruling on summary judgment.

### IV. Conclusion

This court having considered all of the evidence and finding that the defendant's motion for summary judgment (doc. 21) is due to be granted on all counts of the complaint;

It is therefore **ORDERED** by the court that said motion be and hereby is **GRANTED** on all counts of plaintiff's complaint and judgment shall be entered in favor of the defendant and against the plaintiff by separate order.

**DONE** and **ORDERED** this the ___22___ day of February, 2002.

_____
INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE